UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PAMELA BURNS,

        Plaintiff,

v.                                                              Case No. 8:21-cv-1530-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

_____/

## <u>ORDER</u>

Plaintiff seeks judicial review of the denial of her claim for disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

## I.

### A.    Procedural Background

Plaintiff filed an application for DIB on February 19, 2019 (Tr. 178-81). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 122-24, 128-34). Plaintiff then requested an administrative hearing (Tr. 136-37). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 31-64). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 65-84). Subsequently, Plaintiff requested review

from the Appeals Council, which the Appeals Council denied (Tr. 10-16). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. § 405(g).

### B.     Factual Background and the ALJ's Decision

Plaintiff, who was born in 1961, claimed disability beginning on October 10, 2018 (Tr. 178). Plaintiff completed high school (Tr. 205). Plaintiff's past relevant work experience included work as a nurse assistant (Tr. 100). Plaintiff alleged disability due to depression, chronic anxiety, post-traumatic stress disorder ("PTSD") , IBS, SVT of heart, raving thoughts, chronic intersistal cystitis, right knee injury, and right ankle injury (Tr. 91).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2023 and had not engaged in substantial gainful activity since October 10, 2018, the alleged onset date (Tr. 70). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: cardiomyopathy, mild degenerative joint disease of the right knee, an anxiety disorder, a depressive disorder, obsessive compulsive disorder ("OCD"), and PTSD (Tr. 70). Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 71). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform less than the full range of medium work as defined in 20 CFR

404.1567(c) such that the she was limited to only frequent crouching, crawling, kneeling, and climbing ramps or stairs, ladders, ropes, or scaffolds; she retained the ability to understand, remember, carry out, and maintain persistence for work duties that are detailed when tasks are combined but are made up of simple tasks requiring only common sense understanding; she was limited to a work environment with few day-to-day changes in terms of work duties, work settings, or work processes; and she could not work with the public (Tr. 72). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 76).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 78). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a hand packager, industrial cleaner, and warehouse worker (Tr. 56-57, 79-80). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 80).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

## III.

Plaintiff argues that the ALJ erred by (1) failing to properly evaluate medical opinions and (2) failing to include all of Plaintiff's limitations in the hypothetical questions to the VE. For the following reasons, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

### A.    Medical Opinion

Plaintiff argues that the ALJ improperly assessed the medical opinion of record, particularly that of Plaintiff's treating psychiatrist, Dr. Timothy McRea and a consultative examiner, Dr. Sally Stader. Plaintiff also contends that the ALJ failed to properly evaluate prior administrative findings from the state agency consultants. The Commissioner responds that the ALJ properly evaluated and found Dr. McRea and Dr. Stader's opinions as unpersuasive and that the RFC is supported by substantial evidence.

Previously, in the Eleventh Circuit, an ALJ was required to afford the testimony of a treating physician substantial or considerable weight unless "good cause" was shown to the contrary. *Winschel*, 631 F.3d at 1179; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam) (citation omitted). However, claims filed on or after March 27, 2017 are governed by a new regulation applying a modified standard for the handling of opinions from treating physicians. *See* 20 C.F.R. § 404.1520c; *see also Schink*, 935 F.3d at 1259 n.4. Of note, the new regulations remove the "controlling weight" requirement when considering the opinions of treating physicians for applications submitted on or after March 27,

6

2017. 20 C.F.R. § 404.1520c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 895-98 (11th Cir. 2022); *Yanes v. Comm'r of Soc. Sec.*, No. 20-14233, 2021 WL 2982084, at *5 n.9 (11th Cir. July 15, 2021) (per curiam).[1] Indeed, the Eleventh Circuit recently concluded that, since the new regulations fall within the scope of the Commissioner's authority and are not arbitrary and capricious, the new regulations abrogate the Eleventh Circuit's previous precedents applying the so-called treating-physician rule. *Harner*, 38 F.4th at 896. Accordingly, since Plaintiff submitted her application for benefits on February 19, 2019 (Tr. 178-81), the ALJ properly applied the new regulation.

Under the revised regulation, an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative finding, including from a claimant's medical source. 20 C.F.R. § 404.1520c(a). Rather, in assessing a medical opinion, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, and the area of the medical source's specialization. 20 C.F.R. § 404.1520c(c)(1)-(4). However, the primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support

---

[1] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

the opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(2). Beyond supportability and consistency, an ALJ may also consider the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. § 404.1520c(c)(3)(i)-(v) & (5).

### 1. Dr. McRae's Opinions

Dr. McRae is Plaintiff's psychiatrist, who treated Plaintiff on a quarterly basis since 2014 (Tr. 275-76). On July 1, 2019, Dr. McRae submitted a letter as a medical source mental status report on behalf of Plaintiff (Tr. 275-79). Dr. McRae noted that Plaintiff's mood was clearly depressed with a sad and constricted affect (Tr. 275). Plaintiff arrived on time for the appointment and was appropriately dressed and groomed (Tr. 275). Dr. McRae found that Plaintiff's thought processes were slowed, but she was logical and coherent (Tr. 276). For instance, Plaintiff was rational about priorities and stayed on track with the verbal exchange (Tr. 276). However, as an expression of her obsessional anxiety, she reported struggles with ruminating, which was a prominent factor in difficulty falling and staying asleep at night (Tr. 276). Dr. McRae also noted that Plaintiff was "unwavering reality oriented" and demonstrated no disorganization of thought expression (Tr. 276). Dr. McRae also

found that Plaintiff's concentration was adequate to the tasks at hand and her memory was adequate to the tasks pertaining to medication management (Tr. 276). Dr. McRae also found that Plaintiff did not demonstrate any abnormal behavior and she was well coordinated in all observed physical actions (Tr. 276). He also noted that there was active titration in her anti-anxiety and antidepressant medication, which had not been beneficial in bringing further improvement over the previous months (Tr. 276). However, Dr. McRae was hopeful that time and further adjustments may help to achieve a better outcome (Tr. 276). Importantly, Dr. McRae stated that his evaluation was based on his interactions with Plaintiff of half-hour sessions, separated by at least three months and "[t]hus, [his] ability to discern specifics about what [Plaintiff] can and cannot do [was] also limited" (Tr. 276). Moreover, Dr. McRae stated that "the nature of [his] professional relationship (diagnosis and medication management) and the limited time of [his] interactions with her, put this question beyond the scope of what [he] can answer with clear professional judgment" (Tr. 277). Notwithstanding, Dr. McRae opined that "[a]t her current level of energy, drive, focus, and concentration" he did not believe that Plaintiff could maintain functionality in a forty-hour workweek (Tr. 277).

In the decision, the ALJ recites the contents of Plaintiff's medical records, including treatment notes from Dr. McRae (Tr. 73-78). As far as records from Dr. McRae, the ALJ noted that Dr. McRae did not record any clinical observations in his treatment notes (Tr. 74). The ALJ found that Dr. McRae's opinion from July 2019 finding Plaintiff unable to maintain functionality in a 40-hour work week not

persuasive (Tr. 78). Specifically, the ALJ found that the opinion did not set forth a precise function by function assessment of Plaintiff's limitations and did not cite to specific clinical and diagnostic evaluations and abnormalities in the record which demonstrated the extreme limitations consistent with the opinion (Tr. 78). Moreover, the ALJ noted that the opinion itself indicated that an assessment of Plaintiff's abilities was beyond Dr. McRae's professional judgment (Tr. 78).

On October 14, 2019, Dr. McRae provided a mental capacity source statement where he opined that Plaintiff had marked limitations in, among other things, the ability to carry out detailed instructions, perform activities within a schedule, maintain regular attendance and punctual within customary limits, the ability to make simple work-related decisions, the ability to ask simple questions or request assistance, and the ability to set realistic goals or make plans (Tr. 486-87). Dr. McRae also opined that Plaintiff had extreme limitations in, among other things, the ability to maintain attention and concentration for extended periods, the ability to complete a normal workday without interruptions from psychologically based symptoms, and the ability to perform at a consistent pace with a one-hour lunch break and two 15 minutes rest periods (Tr. 486-87). Dr. McRae based his opinion on Plaintiff's depressed mood, poor energy level, reports of panic that inhibit her from leaving her home, and difficulty controlling anger (Tr. 487).

The ALJ found unpersuasive Dr. McRae's opinion from October 2019 finding Plaintiff to have marked to extreme limitations in numerous areas of functioning based on her depressed mood, poor energy levels, reports of panic that

inhibit her leaving her home, and difficulty controlling anger (Tr. 78). Specifically, the ALJ found that the extreme limitations were not consistent with Dr. McRae's own episodic treatment notes which showed mood and otherwise generally mild abnormalities and provided extremely limited clinical observation which were not consistent "with the results of repeated consultative examination by outside third-party evaluators which show only isolated or generally mild abnormalities" (Tr. 78). The ALJ also noted that Dr. McRae's opinion was inconsistent with Plaintiff's ongoing performance of daily living activities or her lack of emergency or inpatient treatment for psychiatric distress as would be expected given the marked and extreme limitations in his opinion (Tr. 78).

The ALJ properly evaluated Dr. McRae's opinions and his conclusion that the opinions were unpersuasive is supported by substantial evidence. Contrary to Plaintiff's argument, the ALJ did more than a cursory review of the record to arrive at his decision. As the ALJ noted, Dr. McRae's treatment notes read more as a contemporaneous report of Plaintiff's symptoms than clinical observations from a treating psychiatrist (*see* Tr. 436-59, 489-94, 506-09). In some cases, Dr. McRae notes a change of medication, which one can infer aligns with Plaintiff's increased reports of anxiety and depression (*see* Tr. 456, 457, 509). However, there are no specific observations as to the degree or extent of impairment caused by Plaintiff's symptoms (*see* Tr. 436-59, 489-94, 506-09). Plaintiff argues that a psychological assessment by a psychiatrist or "psychologist is by necessity based on the patient's report of symptoms and responses to questioning" and "it's illogical to dismiss the

professional opinion of an examining psychiatrist or psychologist simply because the opinion draws from the [Plaintiff's] reported symptoms." (Doc. 32, at 18) (quoting *McVey v. Saul*, Case No. 8:18-cv-2304-T-SPF, 2020 WL 2570073 (M.D. Fla. May 21, 2020) (citations omitted)). However, in the instant case the ALJ did not only consider that Dr. McRae recited Plaintiff's symptoms in his notes, but also the absence of clinical or diagnostic evaluations or observations to support his opinions. For instance, the treatment notes support Plaintiff's allegations of recurring issues with sleep, depressed mood, feeling unmotivated and anxious, among other things. Yet, one would have to make multiple inferences from these notes to arrive at an opinion that Plaintiff has a marked limitation to make simple work-related decisions or an extreme limitation in the ability to maintain attention and concentration for extended periods.

Moreover, specifically as to the July 2019 opinion, Dr. McRae prefaces his opinion that Plaintiff could not maintain functionality in a forty-hour workweek, by stating that as a result of his short interactions with Plaintiff, he has a limited ability to discern what she can and cannot do (Tr. 276). Dr. McRae also couched his opinion in the fact that his professional relationship with Plaintiff was limited to diagnosis and medication management and thus the question of what Plaintiff can still do was beyond the scope of what he could answer with clear professional judgment (Tr. 277). In October 2019, Dr. McRae opined that Plaintiff had marked to extreme limitations in multiple areas, yet his few clinical observations in the record state that Plaintiff is punctual, presents herself groomed and appropriately

dressed, displays logical and coherent thought process, rational priorities, adequate concentration and memory, normal orientation, and no disorganization of thought process or abnormality in behavior (Tr. 482-83).

Dr. McRae's opinions were also inconsistent with other evidence. For instance, in June 2019, Plaintiff had a physical consultative examination where the doctor noted that Plaintiff suffered from anxiety and depression but appeared alert, cooperative, cheerful, and her speech was normal (Tr. 474). Additionally, at a consultative psychological examination, Dr. Tracey Henley found that Plaintiff demonstrated adequate grooming and hygiene and was cooperative and fully oriented (Tr. 478). Dr. Henley found that Plaintiff demonstrated variable eye contact and anxious mood (Tr. 478). Plaintiff presented with logical and goal-oriented thought process and her speech was normal in rate, tone, and prosody (Tr. 478). According to Dr. Henley, Plaintiff's effort, attention, insight, and judgment were all adequate (Tr. 478).Dr. Henley did not provide an opinion stating what Plaintiff could still do despite her impairments or whether she had impairment-related limitations or restrictions to perform mental demands of work activities. *See* 20 C.F.R. § 404.1513.

Furthermore, as the ALJ noted, Plaintiff's own reported activities of daily living do not support Dr. McRae's opinion. For instance, in May 2019, Plaintiff reported that she took care of her pet, including taking her out on golf cart rides (Tr. 226). Plaintiff also reported that sometimes prepared microwave meals and mowed the yard (Tr. 227). Plaintiff asserted that she did laundry and washed dishes when

necessary (Tr. 227). Plaintiff also reported "sometimes" needing help to remember to take her medications, but not needing special reminders to take care of personal needs and grooming (Tr. 227). Plaintiff reported sitting on her porch daily, driving, and going to the store – although she stated that she goes in and out unless someone is with her, in which case, she might look around the store (Tr. 228). Plaintiff also stated that she reads every night to go to sleep, plays games on her tablet, and every once in a while, talks to friends on the phone (Tr. 229). Plaintiff argues that although she does some of these things, it is on a limited basis and with difficulty. However, the role of this Court is not to reweigh the evidence and determine whether the ALJ should have reached a different conclusion. *See Winschel*, 631 F.3d at 1178 (finding that the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision) (citations omitted).

Based on the foregoing, the ALJ did not err in evaluating Dr. McRae's opinions and finding them unpersuasive because they were not supported by his own records or consistent with other evidence.

## 2. Dr. Stader's Opinion[2]

In January 2020, Dr. Stader conducted a consultative examination and provided a psychological evaluation on Plaintiff (Tr. 495-99). Dr. Stader found that Plaintiff was alert and oriented to person, place, situation, and time (Tr. 497).

---

[2] The Commissioner argues that Plaintiff has abandoned this issue for failure to develop a meaningful argument. However, this Court finds that Plaintiff properly raises her issues with Dr. Strader's opinion.

Although no gross gait abnormalities were observed, Plaintiff displayed problem with motor functioning related to fidgeting (Tr. 497). Dr. Stader found that the content of Plaintiff's speech was circumstantial, but she displayed unremarkable speech rate and quality (Tr. 497). Plaintiff demonstrated fair attention and concentration as a result of having some difficulty attending to the evaluator's questions throughout the interview without distraction due to circumstantial thoughts (Tr. 498). Dr. Stader also found that Plaintiff had fair mental flexibility and some difficulties in processing speed (Tr. 498). Plaintiff displayed good receptive and expressive language skills; good immediate memory; fair recent memory; and adequate remote memory, social skills, abstract reasoning, judgment, and social problem solving (Tr. 497-98). Dr. Stader found Plaintiff exhibited obsessively focused thought form and her general thought processes appeared to be circumstantial and overly detailed (Tr. 498). Plaintiff denied suicidal or homicidal ideations and did not describe hallucinations or delusions (Tr. 498). Dr. Stader opined that based on her report and clinical observations, Plaintiff's mental health symptoms appeared to moderately to severely impact her activities of daily living, vocational performance, and interpersonal interactions (Tr. 498).

The ALJ found unpersuasive Dr. Stader's opinion that Plaintiff's mental impairments moderately to severely impacted her activities of daily living, vocational performance, and interpersonal relations (Tr. 78). Specifically, the ALJ found that the opinion did not set forth a precise function by function assessment of

Plaintiff's limitations and was not consistent with Plaintiff's ongoing activities (Tr. 78).

Unlike Dr. McRae's opinion, Dr. Stader's opinion reflects her clinical observations of Plaintiff during her evaluation. Dr. Stader explains that during the evaluation, Plaintiff displayed worry, difficulty controlling the worry, obsessive and ruminating thinking, and circumstantial speech, which was difficult to interrupt (Tr. 496). Plaintiff's anxious thinking was focused on anxiety-producing interactions with others and worry about her daily activities (Tr. 496). Notwithstanding, this Court is not to reweigh the evidence and determine whether the ALJ should have reached a different conclusion. *See Winschel*, 631 F.3d at 1178 (finding that the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision) (citations omitted). During the evaluation, Plaintiff reported that her daily routine consisted of playing in her tablet, reading, and doing house projects (Tr. 497). Sometimes, when driving, she would become so anxious that her foot would shake (Tr. 497). Plaintiff also reported that she was able to prepare basic meals, such as sandwiches and microwave meals and was able to care for her dog and bird (Tr. 497). As previously discussed, the ALJ found Plaintiff's daily activities noteworthy (Tr. 75, 77-78).

Therefore, the ALJ did not err in his evaluation of Dr. Stader's opinion because he properly considered the opinion's supportability and consistency, and his finding is supported by the record.

### 3. Prior Administrative Findings

Plaintiff argues that the ALJ improperly relied on the opinions of Dr. Lee Reback and Dr. George Grubbs by finding them persuasive because they were non-examining psychologists. Plaintiff contends that Dr. McRae's opinion should have been found to be more persuasive due to his examining relationship with Plaintiff, having had examined Plaintiff, and being a specialist.

An ALJ *may*, but is not required to, explain how he or she considers the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, *unless* two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record but are not exactly the same. 20 C.F.R. § 404.1520c(b), (c). In which case, the ALJ will articulate how he or she considered the other factors in reaching their decision . 20 C.F.R. § 404.1520c(b)(3).

In the instant case, the ALJ did not find that Dr. McRae's or Dr. Stader's opinions were supported and consistent with the record. Therefore, there is no requirement for the ALJ to explicitly address the other factors, in particular, the examining relationship with Plaintiff or specialization.

Plaintiff also argues that the ALJ erred by ignoring aspects of Dr. Reback's and Dr. Grubb's opinions by finding that Plaintiff was socially limited to only no interactions with the public, while Dr. Reback's and Dr. Grubb's opinions did not

only limit Plaintiff to moderate limitations in dealing with the public but all others including co-workers and supervisors. Additionally, Plaintiff argues that the ALJ did not consider the aspect of Dr. Reback's and Dr. Grubb's opinion dealing with Plaintiff's moderate limitations in her ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness in the workplace.

Dr. Reback and Dr. Grubb both opined that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods, moderately limited in her ability to interreact appropriately with the general public, and moderately limited in her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness (Tr. 98-99, 114-15). They both also explained that Plaintiff "may experience difficulties being able to relate appropriately to the general public and to adhere to basic standards of neatness and cleanliness (Tr. 99, 115). As a result, the RFC includes limitations for Plaintiff to understand, remember, carry out, and maintain persistence for work duties that are detailed when tasks are combined but are made up of simple tasks requiring only common-sense understanding, be in a work environment with few day-to-day changes in terms of work duties, work settings, or work processes, and to no work with the public (Tr. 72).

Moreover, contrary to Plaintiff's arguments, both Dr. Reback and Dr. Grubb opined that Plaintiff was not significantly limited in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes and not significantly limited in her ability to accept instructions and respond

appropriately to criticism from supervisors (Tr. 99, 115). Therefore, it is clear that the ALJ considered Dr. Reback's and Dr. Grubb's opinion in formulating Plaintiff's RFC.

Based on the foregoing, the ALJ did not err in not explicitly addressing all of the factors when determining the persuasiveness of the state consultants and clearly considered their opinions in formulating Plaintiff's RFC. Substantial evidence supports the ALJ's findings regarding Plaintiff's level of limitations as set out in the RFC.

### B.    VE Testimony

Next, Plaintiff argues that because the RFC was not supported by substantial evidence, the ALJ's reliance on the VE testimony was error. Specifically, Plaintiff argues that ALJ failed to account for the limitations that Dr. McRae and Dr. Stader found. Further, Plaintiff argues that the ALJ failed to account for Dr. Grubb's and Dr. Reback's opinion regarding Plaintiff's moderate limitations in her ability to concentrate, persist and stay on pace, and her ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. The Commissioner argues that the hypothetical questions to the VE accurately conveyed the ALJ's RFC finding, and as such, is supported by substantial evidence.

At step five of the sequential evaluation, the ALJ must determine whether jobs exist in significant numbers in the national economy that a plaintiff can perform. *Winschel*, 631 F.3d at 1180. To make this determination, an ALJ may obtain the testimony of a vocational expert. *Id*. For the vocational expert's opinion

to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* (citing *Wilson*, 284 F.3d at 1227). "If the ALJ presents the vocational expert with incomplete hypothetical questions, the vocational expert's testimony will not constitute substantial evidence." *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (citing *Winschel*, 631 F.3d at 1180). When the ALJ properly rejects purported impairments or limitations, the ALJ need not include those findings in the hypothetical posed to the VE. *Crawford*, 363 F.3d at 1161 ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported").

As discussed above, the ALJ reviewed medical and other evidence in the record, which supports his determination of Plaintiff's RFC. The ALJ posed hypothetical questions to the VE that accurately reflected Plaintiff's RFC and vocational profile (Tr. 56-58). Plaintiff cites no evidence in the record – or even argues – that limitations in the RFC, for instance that Plaintiff retains the ability to understand, remember, carry out, and maintain persistence for work duties that are detailed when tasks are combined but are made up of simple tasks requiring only common sense understanding and cannot work with the public, do not account for her impairments. Ultimately, the ALJ's hypothetical question properly incorporated Plaintiff's RFC and assumed only those limitations which the ALJ found were consistent with the record, and that finding is supported by substantial evidence.

Given that the ALJ hypothetical question accurately reflected Plaintiff's RFC and the VE testified that jobs exist in significant numbers in the national economy that an individual with Plaintiff's vocational profile and limitations could perform (Tr. 56-57), the ALJ did not err in relying on the VE's testimony in support of his ultimate conclusion that Plaintiff was not disabled.

**IV.**

Accordingly, after consideration, it is hereby

ORDERED:

1.      The decision of the Commissioner is affirmed.

2.      The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 29th day of March, 2023.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record

21